Nott, Ch. J.,
delivered the opinion of the court:
The Act %5th April, 1898 (30 Stat. L., p. 361), declared war against Spain. On the following day the claimant enlisted as a first-class fireman in the Navy for the period of three years and was assigned to duty on the U. S. S. St. Paul. On the 21st of September, 1898, he was honorably discharged. His certificate of discharge is in these words:
“This is to. certify that James Cleary, a fireman 1st class, has faithfully served from the 26th day of April, 1898, in the war between the United States of America and the Kingdom of Spain; declared by Congress to have begun on April twenty-first, 1898.
“Is honorably discharged from the U. S. S. St. Paul and from the naval service this 2nd day of September.
“This discharge is issued in accordance with the provisions of the act of Congress, approved May fourth, 1898; the exigency which in the judgment of the President rendered your services necessary having terminated.
“C. D. Sigsbee,
“ Captain, TJ. 8. N., QommandÁng U 8. 8. St. Paul A
On the 3d of March, 1899, Congress enacted:
“The officers and enlisted men comprising the temporary force of the Navy during the war with Spain who served creditably beyond the limits of the United States, and who have been or who may hereafter be discharged, shall be paid two months’ exta pay; and all such officers and enlisted men of the Navy who have so served within the limits of the United States, and who have been or may hereafter be discharged, shall be paid one month’s extra pay.” (30 Stat. L., p. 1228.)
Under this statute the Claimant applied for his two months’ extra pay, but it was refused. The ground of this refusal was thus set forth by the accounting officers:
“I return herewith the application and discharge of James' Cleary. The enlistment of Mr. Cleary is a regular three-year enlistment, and he is not, therefore, entitled to the extra pay provided in act of March 3, 1899, for the temporary force or one-year enlisted men.
“F. H. Morris, Auditor.”
If Congress in the act of 1899 had limited its benefits to those who were enlisted for “one year,” that would be conclusive as to the claimant’s right. But what is there in the *211 statute which will authorize the court to insert those woi’ds bjr construction? If the statute had defined “the officers and enlisted men comprising the temporary force of the Navy during the war with Spain,” that in all probability would have been conclusive one way or the other as to the claimant’s rights. But is there any such definition ? If Congress had limited the benefits of the statute to enlisted men whose form of enlistment was for a temporary service during the war with Spain, that probably would have excluded the claimant from the benefits of the statute'; But is there anjr such limitation ? The statute looks neither to a defined temporary force nor to those who at the beginning in terms enlisted to serve for the limited period of the public exigency, but is as broad as it could well be made. “Comprising the temporary force,” it is. fair to assume, was intended to comprise all of the temporary force “of the Navy during the war with Spain. ”
That this was the purpose of Congress is evidenced not only by the unrestricted terms of the statute but by the invariable policy of the Government. After the war with Mexico and after the civil war, statute after statute witnessed this policy. ' In the contemplation of Congress the forces of the United States fell into two classes: First, those who were soldiers or sailors by profession irrespective of the national exigency, who took war when it came, and if they survived it continued to make military occupation the business of their lives; second, those who left their ordinary avocations at the outbreak of or during the continuance of hostilities and enlisted with the expectation of serving only so long as the exigency continued. To this latter class, to those who have been discharged when war ended, Congress have always and repeatedly given this same gratuity of two months’ additional pay to help the men through the interval between their discharge and the resumption of their avocations in civil life.
In this case the claimant enlisted during the most intensely excited period of the recent war — that is to say, on the day after the war had been declared. He was assigned to duty on one of the temporary cruisers, and he was discharged, as were all of the men on that cruiser, apparently, in a little more than four months after he enlisted. The Government, through *212 its proper agent, Captain Sigsbee, elected to discharge him when the naval force was reduced by taking the St. Paul out of commission. Moreover, his discharge specifically states that it is issued because the exigency, which in the judgment of the President had rendered his services necessary, had terminated, in accordance with the provisions of the act 4th May, 1898. What is there in the transaction to indicate that the claimant was not one of the “enlisted men comprising the temporary force of the Navjr during the war with Spain?” Nothing, except that the form of his enlistment would have authorized the defendants to prolong his service if they or their proper officers had been so minded. Unquestionably, the officer who ordered the discharge and the man who accepted it acted in the full belief that his services were no longer required in the Navy, and that it was for the public welfare that he should be discharged.
The distinction which has been, drawn in the Navy and Treasury Departments between the men who enlisted for one year and men who enlisted for three years seems to have come about in this way: Before the war began, viz, on the 1st day -of April, 1898, a brief informal order was issued by the Chief of the Bureau of Navigation to the commandant of the Washington Navy-Yard, which said:
“1. Until further notice, in making enlistments at the station under your command, you are authorized to waive the age limits for all ratings at discretion; but you will please instruct the recruiting officer to use careful judgment in so doing.
“ 2. You are authorized to enlist well-qualified men for one year, unless sooner discharged, noting on enlistment records ‘Department will grant discharge, if requested, before expiration of enlistment, provided the exigencies of service permit.’
“Very respectfully,
“A. S. GrowniNSHield,
“ Glvief of Bureau,
“COMMANDANT, NaVT-YaRD,
“ Washington, D. (7.”
There was no statute at that time which authorized the enlistment of a temporary naval force, and there has been no statute passed since which in terms ratified it. The Act 4th *213 May, 1898 (30 Stat. L., pp. 369, 370), made an appropriation “to enable the Secretary of the Navy to enlist, at any time after the passage of this act, as many additional seamen, landsmen, and boj's as he may deem necessary to man the ships of the Nav3r, or in use by the Navy, as a temporary force therefor during the existing war. ” This is prospective in terms — ■ clearly prospective — that “after the passage of this act” the Secretary of the Navy may do thus and so. But neither the Treasury nor the Navy Department has restricted the benefits of the act of 1899 to officers and seamen who were enlisted subsequently to this act of May 4, 1898. As to those men who enlisted under the order of April 1 at the Washington Navy-Yard prior to the 4th of May, 1898, it seems to be conceded that they were a part of the temporary force of the Navy, irrespective of the statute under which they were ostensibly discharged. The order of the Chief of the Bureau of Navigation was not a public proclamation by the President or an order of the Secretary of the Navy, of which the public were more or less bound to take notice. It was simply an order from one official to another. In time the distinction made bjr that order hardened into a well-understood usage in the Navy .Department, but when this claimant enlisted there was nothing in the statutes or in the public proclamations of the time or in the regulations of the Navy Department which excluded him from the class of men who enlisted for the exigencies of the day and hour; and certainly there was nothing which would thereafter preclude the naval authorities from discharging him when the time came for the necessary reduction of the Navy. The “one-year” restriction existed in the orders and inferences of the Department. It did not exist elsewhere, and it was not adopted by Congress in the act of 1899.
That statute looks to the termination of a man’s service, and not to the form of his enlistment — to the two substantial facts that he enlisted after the war began and was discharged on or about the time it ended. A seaman who serves out the full term of his three years’ enlistment and reenlists is entitled to three months’ leave of absence on full pay (Rev. Stat., sec. 1573). When the proper officer of the Government elected to discharge the claimant as one of those who might properly *214 be discharged in the reduction of the naval force then going- on, it was an election by the Government which entitles the seaman to the other alternative — his two months’ additional pay.
The conclusion of the court is that where a man' enlisted during the war with Spain, or when war was imminent, and was discharg-ed at or about the termination of hostilities, and his discharge indicates that he was discharged as one of the temporary force of the Navy, he is entitled to the two months’ additional pay given by the act of 1899. And the judgment of the court is that the claimant recover seventy dollars ($70).